# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:21-cr-00236 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| MATTHEW LYNCH | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Matthew Lynch's motion to suppress evidence (Doc. No. 48) and supplement to the motion (Doc. No. 75), to which the Government has responded (Doc. No. 82, 85).

For the reasons stated herein, the motion to suppress is DENIED.

## I. BACKGROUND

On April 10, 2017, Detective Robert Carrigan of the Metropolitan Nashville Police Department sought a search warrant for 300 31st Ave. North, Apt.#423, Nashville TN, 37203 – the address of Defendant Matthew Lynch. Detective Carrigan's affidavit in support of probable cause, which was reviewed and approved by Assistant District Attorney for Davidson County Chad Butler on March 20, 2017, stated:

> On February 1, 2017, your Affiant received a case referral from National Center for Missing and Exploited Children (NCMEC) which acts, by authority vested to it from the U.S. Congress, as a clearinghouse for information regarding the sexual exploitation of minors, including sexual images and/or videos of minors (i.e. "Child Pornography"). The referral to your Affiant provided information on a suspect uploading a sexual image of minor children to an internet profile on www.pinterest.com. On December 14, 2016 NCMEC had received a referral from Pinterest Inc. (www.pinterest.com), an internet social networking site which allows users to create user profiles and upload images to that profile which can be viewed by other users. Pinterest is a free online service which allows users to create their own accounts and screennames. In this case the suspect user screen name was "Matt Matt" with a verified email address of mattlynch6262@gmail.com. Pinterest routinely monitors the activity on their

> network. If suspected illegal content, such as sexual images of minor children, is found being uploaded, Pinterest immediately preserves account information, including date & time of the event, the suspect user/screenname, and IP address of that user's device making the upload. Pinterest then reports the suspicious activity to NCMEC, which in turn refers the allegations to the appropriate law enforcement jurisdiction for further investigation. In this incident Pinterest noted that on 10-29-2016 20:17:17 UTC the suspect account with user/screenname "Matt Matt" uploaded a sexual image of minors to www.pinterest.com while using IP address 107.142.100.65. Pinterest became aware of that upload and reported it to NCMEC. Pinterest included the suspect account information, IP logs, verified email account, and one uploaded image believed to be a sexual image of minors.
>
> Your Affiant reviewed the information provided by Pinterest, including the image uploaded by the suspect. The image is of three young, pre-pubescent girls, all completely nude, standing side by side with their tongues stuck out and pinching their own nipples. Their breasts and vaginas are exposed to the camera. All the girls appear to be around 8-10 years old with limited breast development and no pubic hair. That image clearly depicts "sexual activity" as defined by Tenn. Code Ann. § 39-17-1002(8)(G) which defines "sexual activity" as the lascivious exhibition of the female breast or the genitals, buttocks, anus, or pubic or rectal area of any person. The possession of this image is a violation of Tenn. Code Ann. § 39-17-1003 (Sexual Exploitation of a Minor) & the distribution of that image is in violation of [Tenn Code Ann.] § 39-17-1004 (Agg. Sexual Exploitation of a Minor).

(Doc. No. 48-1). Judge Allegra Walker of the Davidson County General Sessions Court found probable cause to believe evidence of a crime would be located at Defendant's address and issued the search warrant that same day.

The following day, Detective Carrigan and two other detectives executed the search warrant. (Doc. No. 48-2). Detective Carrigan made an audio recording of the execution of the warrant.[1] Upon arrival Detective Carrigan identified himself and the other detectives to Defendant and advised Defendant that he did not have a warrant for Defendant's arrest, but that he was

---

[1] The audio recording was filed manually on December 4, 2024. (*See* Doc. Nos. 83, 84). The Government also filed an unofficial transcript of the recording. (Doc. No. 98). For ease of reference, the recording is cited as "Recording at [TIME]."

2

investigating a case involving "some internet stuff." (Recording at 1:18 – 1:41). He then advised Defendant that he was "not required to talk to me at all once I explain what I'm here for you don't have to make any statements if you choose not to" and that he could "stop talking at any point." (*Id*. at 1:41 – 1:49). Defendant engaged in conversation with the detectives until about ten minutes into the recording. He told them he had used Pinterest with at least two accounts associated with two different email addresses belonging to him. (*Id*. at 4:23 – 5:04). He also stated that his account had been flagged by Pinterest a few months before the search and that he had been locked out of his Pinterest accounts. (*Id*.). Detectives found two laptop computers in the residence. (Doc. No. 48-2). Defendant explained that one of the laptops was a work computer. (Recording at 5:34 – 5:51). Detective Carrigan told him they would try to preview the work computer so they could leave it with him if possible. (*Id*.).

Approximately ten minutes into the recording, Defendant stated, "I'm not going to say any, I'm not going to answer any more questions." (*Id*. at 10:05 – 10:09). A few minutes later, Defendant asked Detective Carrigan questions about when the report was made and by whom, and Detective Carrigan answered those questions. (*Id*. at 12:22 – 14:02). After reviewing Defendant's work computer, Detective Carrigan informed Defendant that they would not need to seize the work computer. (*Id*. at 15:50 – 16:17). A few minutes later, Detective Carrigan turned to the personal computer and asked Defendant for the password, which Defendant provided. (*Id*. at 18:05 – 18:38). The detectives finished their search of the apartment around the thirty-minute mark on the recording. (*Id*. 27:16 – 30:16). They seized a Dell Laptop, a Samsung SM-G930V cellphone, a Samsung Galaxy 5G Cell Phone, and a Maxtor hard drive. (Doc. No. 48-1).

## II. ANALYSIS

Defendant seeks to suppress all evidence obtained during the search of his apartment and all derivative evidence because he claims the search warrant affidavit failed to establish probable cause to believe that evidence of a crime would be found in the residence. He contends the information in the affidavit was stale; (2) the affidavit fails to establish that the image depicted "sexual activity" under Tennessee law; and (3) the affidavit contained irrelevant and misleading information. Defendant also argues the affidavit knowingly and intentionally omitted material facts which, if disclosed to the issuing judge, would have resulted in the decision to deny the search warrant application. Defendant contends he is entitled to a *Franks* hearing. Finally, Defendant claims the evidence found on his personal laptop computer should be suppressed because the password to that device was obtained in violation of his *Miranda* rights.

### A. Probable Cause

The Fourth Amendment requires that a search warrant is supported by probable cause. U.S. Const. Amend. IV. To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain sufficient facts that indicate a fair probability that evidence of a crime will be found at the place to be searched. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). Probable cause requires "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2019). "Probable cause is not a high bar." *Moore*, 999 F.3d at 996 (quoting *District of Columbia v. Wesby*, 538 U.S. 48, 57 (2018)). Because probable cause "is concerned with facts relating to a presently existing condition," a warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir.

4

1998)); and *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (quoting *Sgro v. United States*, 287 U.S. 206 (1932)).

The Court does not review the issuing judge's probable cause determination de novo. *United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019) (citing *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018); *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Instead, the Court affords "great deference toward the issuing judge's determination," and limits its review to the four corners of the affidavit. *Moore*, 999 F.3d at 996. "[T]he issuing judge's decision should be left undisturbed if there was a 'substantial basis' for the probable-cause finding." *Tagg*, 886 F.3d at 586.

1. Staleness

Defendant contends the information in the search warrant affidavit was insufficient to support probable cause because the alleged Pinterest activity took place over five months before the search warrant was obtained and Defendant moved apartments during this time. (Doc. No. 48 at 5). Defendant asserts the delay, coupled with his change of apartments diminishes the likelihood that evidence would be found in the new apartment.

Whether the information contained in an affidavit is stale is determined by the circumstances of each case. *Spikes*, 158 F.3d at 923. "[T]he function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Id*. (quoting *United States v. Hensen*, 848 F.2d 1374, 1382 (6th Cir. 1988)). To determine whether the information presented in the affidavit is "stale," the court considers: (1) the character of the crime; (2) the criminal; (3) the thing to be seized; and (4) the place to be searched. *Id*. at 923.

Defendant acknowledges that the "character of the crime" of child pornography has a

5

potentially infinite life span. (Doc. No. 48 at 6 (citing *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)). He argues that under the circumstances here, however, the likelihood that evidence would be found in his apartment is diminished and is insufficient to establish probable cause. This is because he was suspected of interacting with a single image over five months before the warrant issued, was living in a different apartment at the time of the alleged conduct, and the affidavit does not demonstrate that he was a "collector" of child pornography.

Defendant is correct that a single instance of pinning an image over five months before the warrant issued diminishes the likelihood that evidence of a crime would be found at the place to be search as compared to someone who interacted with more images closer in time to the search. However, as Detective Carrigan explained in the affidavit in support of the search warrant, "[d]ue to the nature of digital data, information that a computer user deletes from his/her computer system can remain on the disk *indefinitely*, and can be recovered and analyzed as easily as existing undeleted information on the disk." (Doc. No. 48-1 at PageID# 145) (emphasis added). Therefore, the fact that there was only one image and that Defendant's alleged interaction with the image was over five months before the search warrant issued does not affect the probable cause determination. The potentially infinite duration of digital evidence also discounts the importance of evidence that Defendant was or was not a collector of child pornography. As the Government argued, "the affidavit supports probable cause that Defendant collected at least one image of child sexual abuse material." Given the infinite duration of digital evidence, the fact that the evidence showed Defendant collected a single image does not negate probable cause. Finally, the fact that Defendant moved residences also does not diminish the likelihood that the digital evidence on his computers, phones, and other electronic devices would not be found at the new residence because these are the types of items a person normally brings with them when they move.

Under the circumstances, the information provided in the search warrant affidavit was not "stale" and establishes a fair probability that evidence of a crime would be found at Defendant's residence.

2. The Nature of the Image

Defendant next argues that the search is invalid because the affidavit in support of the search warrant fails to establish that the image in question depicts "sexual activity" as defined by Tennessee law.

At the time of the warrant, the applicable Tennessee statute defined "sexual activity" to be the "lascivious exhibition of the female breast or the genitals, buttocks, anus, or pubic or rectal area of any person." Tenn. Code Ann. § 39-17-1002(8)(G) (2014). "Lascivious" has been defined by the Tennessee Supreme Court as "tending to [incite] lust; lewd; indecent; obscene." *State v. Hall*, 682 S.W.3d 143, 152 (Tenn. 2019) (quoting *State v. Whited*, 506 S.W.3d 416, 430 (Tenn. 2016)). "Mere nudity, without more, is insufficient to establish a lascivious exhibition of private body areas." *Id*. at 154 (quoting *Whited*, 506 S.W.3d at 431). The task of determining whether the depiction is of "mere nudity" or whether it is of "sexual activity," i.e., a "lascivious exhibition" is an "intensely fact-bound question." *Id*. at 153-54 (quoting *Whited*, 506 S.W.3d at 431). Factors that may move nudity in the direction of "lasciviousness" include "the nature of the nudity depicted, emphasis or focus on private body areas, posing or coaching of the minor by the defendant, sound effects or commentary, or the defendant's presence in the depiction in a way that suggests a voyeuristic perspective." *Id*. at 154.

The Tennessee Supreme Court has held that hidden camera videos depicting nudity of minors to varying degrees were not lascivious when the camera was not focused exclusively on the victim's private areas, and "nothing in the videos indicated that the victims were posed or

7

coached; they [were] not unnatural or overtly sexual poses and appear[ed] unaware of the camera." *Whited*, 506 S.W.3d at 442, 446; *see also*, *Hall*, 682 S.W.3d at 143, 145-147, 152 (Tenn. 2019) (holding that the evidence was insufficient to support a finding that the defendant intended to record, and believed he would record the victim engaged in a lascivious exhibition of her private body areas where the defendant hid a camera in the minor victim's bedroom aimed at the area where she changed clothes). In contrast, in *State v. Melton*, the Tennessee Court of Appeals upheld Melton's conviction for sexual exploitation of a minor where Melton showed the 10- or 11-year-old minor victims "Girls Gone Wild" video, told them "that's how girls [their] age acted," gave them a video camera and encouraged them to make their own video. *State v. Melton*, No. E2017-00613-CCA-R3-CD, 2018 WL 934650, at * 8 (Tenn. Ct. App. Feb. 16, 2018). The victims in *Melton* described "removing all of their clothing, dancing in front of the camera, jumping on the bed, grabbing their breasts, and using a lamp as a stripper pole." *Id*. The court held that these acts "could certainly be construed as 'unnatural' and 'overtly sexual'" such that the video portrayed a lascivious exhibition. *Id*.

Here the image in question falls somewhere in between. Detective Carrigan described the image as follows: "The image is of three young, pre-pubescent girls, all completely nude, standing side by side with their tongues stuck out and pinching their own nipples. Their breasts and vaginas are exposed to the camera. All the girls appear to be 8-10 years old with limited breasts [sic] development and no pubic hair." [2] (Doc. No. 48-1 at PageID# 143). Defendant does not dispute the accuracy of Detective Carrigan's description, but contends the image does not depict sexual

---

[2] Although the Government has stated that it has a copy of the image available, the Court does not find it necessary to view the image in question for purposes of determining whether the issuing judge had a substantial basis for the probable cause determination, particularly considering that the issuing judge relied on the officer's description of the image. *See Tagg*, 886 F.3d at 586.

8

activity.

Unlike the hidden camera images from *Whited* or the scene attempted to be filmed in *Hall*, the image here does not depict activities normal for the setting. Moreover, the description of the image suggests that the minors were entirely nude, unnaturally posed, and aware they were being photographed. While the image described is not as overtly sexual as the video in *Melton*, that video does not set a baseline for what is considered sexual activity. Based on the description of the image and Detective Carrigan's experienced conclusion that the image depicted "sexual activity," Judge Walker reasonably concluded that the image in question was not "mere nudity," that there was probable cause to believe the image depicted "sexual activity," and that the warrant affidavit established probable cause to believe evidence of a crime would be found in Defendant's residence.

3. Superfluous Information in the Affidavit

Defendant next argues that information about Detective Carrigan's experience is largely irrelevant to the facts of the case, is misleading, and should be excised from the search warrant affidavit for purposes of determining whether the search warrant affidavit establishes probable cause. (Doc. No. 48 at 13). For example, Defendant takes issue with Detective Carrigan's discussion of peer-to-peer file sharing, general characteristics of those who wish to obtain child pornography, and collectors of child pornography on grounds that none of that information is applicable to his interaction with a single image on Pinterest. (*Id*. at 13-14).

The Court disagrees that it was irrelevant or misleading for Detective Carrigan to include a description of his twenty-four years of training and experience as a detective, fifteen years of which was specifically related to investigating sexual crimes against children. The background provided informed the issuing judge of the ways child predators use various technologies and what

evidence might be expected to be found on devices seized at Defendant's residence. Defendant also takes issue with the affidavit's use of "collector" as a term, arguing that inclusion of the discussion of "collectors" misleadingly suggests that there is probable cause to believe Defendant was in possession of "massive quantities of child pornography" when the facts only discuss a single image. Viewing the affidavit as a whole, the use of the term "collector" is not misleading because the affidavit is clear that Defendant is suspected of interacting with a single image. Possession of a single image is a crime. Therefore, even if the portions of the affidavit referring to "collectors" were excised, there is sufficient basis for Judge Walker's finding of probable cause.

## B. *Franks* Hearing

Defendant next argues Detective Carrigan's failure to include information in the search warrant affidavit that NCMEC classified the image as "unconfirmed child pornography" and that the image was a "PIN-REPIN" constituted reckless disregard for the truth and that he is entitled to a *Franks* hearing. (Doc. No. 48 at 16-19).

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may challenge a search warrant based on "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and … the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-56. "Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017). "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in

the affidavit." *Id*. at 349 (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

To obtain a *Franks* hearing based on an alleged omission from a search warrant affidavit, a defendant must make a strong preliminary showing that the affiant "exclude[ed] critical information from the affidavit" "*with an intention to mislead*." *Hale v. Kart*, 396 F.3d 721, 726 (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original). This is because "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). Such instances are "rare." *See Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 2015) ("A Franks hearing may be merited when facts have been omitted in a warrant application, but only in rare instances. … [A]llowing omissions to be challenged would create a situation where almost every affidavit of an officer would be questioned.").

"In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence," the Court must examine the affidavit with the false material set to one side and/or the omitted material included, and determine whether probable cause still exists. *Franks*, 438 U.S. at 155-56; *Atkin*, 107 F.3d at 726. If it does not, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56.

Defendant argues Detective Carrigan engaged in reckless disregard for the truth in two ways. First, when he averred that "the Pinterest image displayed sexual activity defined as a lascivious exhibition" while omitting that NCMEC classified the image as "unconfirmed child pornography." (Doc. No. 48 at 17). Defendant contends the NCMEC classification "either removed the cloak of suspicion from innocuous activity or exposes flagrant misrepresentations."

11

(*Id*.). Second, Detective Carrigan averred that the image was uploaded and posted on Pinterest, when, in fact, the image was "re-pinned" by the user after visiting a board titled "boobies." (*Id*. at 17-18). Defendant argues the distinction is important because an "upload" implies that the user had the image on his own device, whereas a "re-pin" does not. Defendant contends that if the information that the image was "re-pinned" rather than "uploaded" had been included, it would have been clear to the issuing judge that probable cause was lacking. Defendant points to the fact that Detective Carrigan provided the correct terminology in the "Request for Laboratory Examination" form as evidence that he knew the accurate description of how the image existed on the Pinterest platform. (*Id*. at 18 (citing Doc. No. 48-4)).

Detective Carrigan's omission of specific NCMEC classification of the suspect image is not one of the rare instances where omitted facts warrant a *Franks* hearing. First, the complete NCMEC classification is "Apparent Child Pornography (Unconfirmed)." (*See* Doc. No. 48-3). This classification indicates that the image appears to be child pornography. That the label includes the qualifier "unconfirmed," does not convey that it is not possible to ascertain whether the image is in fact child pornography; it is merely a reflection of NCMEC's role as a national clearinghouse and resource center rather than an investigative agency. (*See* Doc. No. 48-3 (describing NCMEC)). As it did here, NCMEC refers reports of "Apparent Child Pornography," including the image, to appropriate law enforcement agencies for investigation. (*Id*.). Nowhere in the affidavit did Detective Carrigan suggest that NCMEC sent a report of "confirmed" child pornography. (*See* Doc. No. 48-1). Instead, he correctly characterized the report as a report of "suspected illegal conduct" that NCMEC "referred to the local law enforcement jurisdiction for further investigation." (*Id*.). Detective Carrigan then stated that he had personally reviewed the suspect image, described the image in detail, and stated that the image "clearly depicts 'sexual activity,'

12

as defined by Tenn. Code Ann. § 39-17-1002(8)(G)[.]"

Nothing in these circumstances suggests that Detective Carrigan omitted the specific NCMEC classification of the image with reckless disregard for truth or an intent to mislead the issuing judge. Nor is there a plausible basis to believe that NCMEC's classification of the "apparent child pornography" as "unconfirmed" would have been critical to the finding of probable cause or lack thereof. Indeed, given the totality of information provided in the affidavit, including the detailed description of the image, inclusion of the complete NCMEC classification, "Apparent Child Pornography (Unconfirmed)" likely would have had no effect on the probable cause determination at all.

Defendant's assertion that Detective Carrigan recklessly disregarded the truth based on his use of the term "upload" to describe Defendant's alleged engagement with the image on Pinterest is similarly unavailing. As the Government points out, the NCMEC report upon which the search warrant affidavit was largely based refers to the file as an "uploaded file" throughout the report, including in two section headers titled "Uploaded File Information," the executive summary, description of incident time, and in describing the IP address information and location of the user. (*See* Doc. No. 48-3 at PageID # 156-60). The only part of the report that suggests that the image may have been "re-pinned" is in the "additional information" concerning the uploaded file in which it states "PIN_REPIN." (*Id*. at PageID# 159). That information, which was included under the report heading "Uploaded File Information," stated:

13

| | |
|---|---|
| **Additional Information:** | PIN_REPIN<br>METHOD: in_app_browser<br>pin details:<br>Result of YOUR search: pimpandhost.com uploaded on 4 Uploaded on: August 27, 2015, 3:47 pm? (NONE of the images is related to this website.) Board name: boobiesBoard id: 501658914681973720 |

(*Id.*).

It is not clear from the NCMEC report that the suspect user exclusively "re-pinned" the image as the report repeatedly refers to the image an "uploaded file" and the "PIN_REPIN" description could refer to either a "pin" or a "re-pin." Detective Carrigan's use of the term "uploaded image" to refer to the image does not show a reckless disregard for the truth or an intent to mislead.

Defendant argues that the fact that Detective Carrigan specified that the image was "re-pinned" when he filled out the digital forensics request form two days after he executed the search warrant and spoke with Defendant shows that he knew the correct terminology and suggests that he intentionally or recklessly disregarded the truth when he stated in the warrant affidavit that the files were uploaded. The Court disagrees. When Detective Carrigan completed the digital forensics request form he had spoken with Defendant about his Pinterest activities and had additional information not available at the time of the search warrant affidavit. Perhaps in hindsight, the meaning of "PIN_REPIN" is more clear, but given that the image was referred to throughout the NCMAC report as an "uploaded file," Defendant has not established that Detective Carrigan acted with reckless disregard for the truth or an intent to mislead when he referred to it as such in the affidavit.

Moreover, even if Detective Carrigan had averred that the image was "re-pinned" on

Pinterest rather than "uploaded," it would not affect the conclusion that there was probable cause to believe evidence of Defendant's activity related to the image would be found on his electronic devices. As Detective Carrigan explained in the warrant affidavit, "[c]omputer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, *or viewed via the Internet*." (Doc. No. 48-1 at 9) (emphasis added).

Defendant has failed to make a sufficient showing that Detective Carrigan recklessly disregarded the truth when he drafted the affidavit and that these alleged false statements had any material effect on the probable cause analysis. Accordingly, he is not entitled to a *Franks* hearing or to suppression of the fruits of the search warrant on this basis.

## C. *Leon* Good Faith Exception

Even if Defendant's arguments had merit, "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011); *see also*, *United States v. Leon*, 468 U.S. 897, 918-21 (1984). To determine whether the good faith exception to the exclusionary rule applies, the Court considers all of the circumstances to determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922-23. For an officer's reliance on a warrant to have been reasonable, the warrant application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)). The showing required to establish that the reliance was "objectively reasonable" is less than the "substantial basis" showing required to establish probable cause. *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). "If the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless

of how remote it may have been' – 'some modicum of evidence, however slight' – 'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005)).

This good-faith exception does not apply if: "(1) the warrant contained a knowing or reckless falsehood; (2) the issuing judge acted as a mere 'rubber stamp' for the police; or (3) the warrant and the affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid." *United States v. Logan*, 250 F.3d 350, 366 (6th Cir. 2001) (citing *Leon*, 468 U.S. at 923)).

Defendant argues the good faith exception does not apply here because the "affidavit is so lacking in indicia of probable cause" and because "Detective Carrigan misled the magistrate judge by omitting material facts pertinent to determining probable cause." (Doc. No. 48 at 19-20). The Court disagrees. For the reasons stated above, the search warrant affidavit was not so lacking in indica of probable cause that officers could not reasonably presume it was valid, and it did not contain knowing or reckless false statements. Accordingly, even if the search warrant were deficient, suppression is not warranted under the good faith exception.

## D. Evidence from the Laptop

Defendant's last argument is that the evidence obtained from his Dell laptop computer should be suppressed because the officers impermissibly asked him for the password to that computer after he had invoked his right to silence. (Doc. No. 48 at 20). The Government responds that the password was not obtained in violation of Defendant's constitutional right to remain silent because Defendant clearly reinitiated questioning, but that even if there were a constitutional

violation, evidence obtained from the laptop should not be suppressed because it would have been inevitably discovered even if Defendant had not provided the password. (Doc. No. 82 at 28-30). The Government asserts that "[w]hile Defendant's providing the password to unlock his device made accessing the device and seizing the contents easier for detectives, forensic extraction of the device would have occurred regardless of Defendant's providing his password." (*Id*. at 30).

The Fifth Amendment provides that an individual may not be "compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. Much of the case law in this area arises out of custodial interrogation where both the right to counsel and the right to silence are at issue. The parties agree that regardless of whether an individual is in custody, once he expressly invokes his right to silence, interrogation must cease. *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

If an individual reinitiates questioning after invoking his right to silence, officers may continue questioning until a reassertion of rights. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (holding that a subject may be subject to further interrogation after invoking a right to silence or counsel "if the accused himself initiates further communication, exchanges, or conversations with police"); *see also*, *Davie v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008) ("[A]n *Edwards* initiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk generally about his case.") (citing *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994)); *United States v. Clay*, 320 F. App'x 384 (6th Cir. 2009) (rejecting defendant's argument that investigators violated her Fifth Amendment right by interrogating her after she invoked her right to counsel because her request to talk to investigators again evidenced a willingness for generalized discussion about the investigation).

Here, Defendant showed a willingness to continue to talk about his case when he reinitiated conversation about the investigation by asking Detective Carrigan about the report leading to the

17

search. Accordingly, Detective Carrigan's question for the password for the laptop did not violate Defendant's rights under the Fifth Amendment.

Even if there had been a Fifth Amendment violation, the Government argues the evidence obtained from the laptop should not be suppressed because the evidence would have inevitably been discovered. "The inevitable discovery exception to the exclusionary rule applies when 'the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered.'" *United States v. Hilton*, 625 F. App'x 754, 759 (6th Cir. 2015) (quoting *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir.1995) (emphasis in original)).

Here, the Government provides evidence that the detectives lawfully obtained the laptop pursuant to the state search warrant, requested a forensic extraction of the seized device, and years later obtained federal search warrants to reexamine the devices in light of technological improvements. (*See* Doc. No. 48-1 (April 2017 Search Warrant); Doc. No. 48-4 (April 2017 Request for Digital Forensic Evaluation), Doc. No. 54 (notice discussing additional federal search warrants). However, none of this evidence makes clear that the forensic investigators would have been able to obtain evidence from the laptop without the password. Based on experience in other cases, the Court believes it is likely that they could have done so, but nothing in the record conclusively establishes that investigators would have been able to access the laptop without the password – i.e., that the evidence on the laptop would have been inevitably discovery. Accordingly, at this juncture, the Court cannot say that the inevitable discovery exception applies.

It may be the case that the Government did not file such evidence because it mistakenly believed that it would be apparent to the Court that forensic extraction of the laptop is not

18

dependent on the password. Regrettably, the Court is without expertise in this area. The Court will, however, give the Government an opportunity to demonstrate that the contents of the laptop would have been inevitably discovered and, if appropriate, will issue an amended order addressing this issue.

### III. CONCLUSION

For the reasons stated herein, the Court finds there was a substantial basis for the issuing judge's probable cause determination, Defendant is not entitled to a *Franks* hearing, and the evidence from the laptop was not obtained in violation of Defendant's Fifth Amendment rights. Accordingly, the motion to suppress evidence is **DENIED**.

As stated above, the Government may file a supplemental response concerning inevitable discovery. Any such supplement shall be filed on or before January 10, 2025.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE